IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH AND JOANNE PILCHESKY, | : | CIVIL ACTION NO. **3:CV-05-2074** |
| | : | |
| Plaintiffs | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFREY B. MILLER, et al. | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I. Introduction.

On March 7, 2006, the Plaintiffs, Joseph and Joanne Pilchesky, filed, through counsel, a second amendment to their original civil rights action, which they filed on October 12, 2005, under 42 U.S.C. § 1983.  (Docs. 1, 16, 40).  This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a).  Named as Defendants are the following: Col. Jeffrey B. Miller;  Lt. Col. Ralph M. Periandi; Maj. Joseph R. Marut; Lt. Gregory Mitchell; Capt. Brett Waggoner; D.A. Andrew Jarbola; Maj. Frank Pawlowski; Corp. Michael McTavish; Capt. Robert Evanchick; Trooper Derek Fozard; and First Asst. D.A. Eugene Talerico.[1]  (Doc. 40, p. 1).  Here, we are to determine whether we should grant the Defendants' Motions to Dismiss.[2]  **(Docs. 41-42)**.[3]

---

[1].    In this second amendment to the original complaint, the Defendants are sued in their official capacities, except the following Defendants, who are sued in both their official and individual capacities: Maj. Frank Pawlowski; Corp. Michael McTavish; Capt. Robert Evanchick; Trooper Derek Fozard; and First Asst. D.A. Eugene Talerico.  (Doc. 40, p. 1).  All of the named Defendants are employees of the Pennsylvania State Police ("PSP"), except Defendants District Attorney Jarbola and Assistant District Attorney Talerico.

[2].    The undersigned has been assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b).

[3].    The District Attorney's Office ("D.A.") Defendants and the PSP Defendants filed separate Motions to Dismiss.

## II. Procedural History

As stated, on October 12, 2005, the Plaintiffs filed their original civil rights action, naming as Defendant the Pennsylvania State Police ("PSP"). (Doc. 1). On December 21, 2005, the Plaintiffs filed their first amended complaint, naming as Defendants Jeffrey B. Miller, Ralph M. Periandi, Joseph R. Marut, Robert Evanchick, and Derek Fozard. (Doc. 16, p. 1).[4]  On March 7, 2006, the Plaintiffs filed the present second amended complaint. (Doc. 40).

In response, on March 28, 2006, the PSP Defendants (Michael McTavish, Gregory Mitchell, Frank Pawlowski, Brett Waggoner, Robert Evanchik, Derek Fozard, Joseph Marut, Jeffrey Miller, and Lt. Colonel Ralph Periandi) and the District Attorney's Office ("D.A.") Defendants (Andrew Jarbola and  Eugene Talerico)[5] separately filed Motions to Dismiss the second amended complaint. (Docs. 41 & 42, respectively). On April 7, 2006, the D.A. Defendants filed a Brief in Support of their Motion to Dismiss. (Doc. 45). On April 11, 2006, the PSP Defendants filed their Brief in Support of their Motion to Dismiss. (Doc. 46).

On May 8, 2006, the Plaintiffs submitted their Brief in Opposition to both of the Defendants' Motions to Dismiss, in response to which the two sets of Defendants timely filed separate Reply Briefs. (Docs. 55 & 56). Both Motions are now ripe for disposition. (Docs. 41 & 42).

---

4.    In this first amendment to the original complaint, the Defendants were sued in their official capacities, except Defendant Fozard, who was sued in both his official and individual capacities. (Doc. 16, p. 1).

5.    Hereinafter, we shall collectively refer to Defendants Michael McTavish, Gregory Mitchell, Frank Pawlowski, Brett Waggoner, Robert Evanchik, Derek Fozard, Joseph Marut, Jeffrey Miller, and Lt. Colonel Ralph Periandi as the "PSP Defendants" and to Defendants Jarbola and Talerico as the "D.A. Defendants."

## III.  Background

The second amended complaint states that the Plaintiffs operated a non-commercial website message board, www.dohertydeceit.com, the purpose of which was to give community members a forum to discuss local (*i.e.*, Scranton, Pennsylvania) politics and politicians.  (Doc. 40, p. 6).  On that website, community members could specifically discuss Scranton's Director of the Office of Economic and Community Development, Sara Hailstone.  (Doc. 40, p. 7).  In either September or early October 2005, the Plaintiffs posted the following on his website:

> Who is Sara Hailstone?  She's the Executive Director of OECD, and much, much more.  Qualifications to be the Executive Director of OECD?  None.  Responsibilities: Handle tens of millions of dollars, among other things.  When recently asked for records by a taxpayer group, she sent a written response that stated, "I refuse."  Sara knows where millions of dollars went, and she's the only one who knows. She keeps her lips tight . . . sort of.

(Doc. 40, p. 7).  On October 3, 2005, the Plaintiffs posted another message, entitled "Wanted: Info. On Hailstone," which stated "Everything and anything.  Who is she dating?  Has dated?  Relations with Doherty?  Email me if necessary.  Confidentiality assured."  (Doc. 40, p. 7-8).

The Plaintiffs claim that, on October 5 and 7, 2005, in response to the postings, Sara Hailstone's brother, A. James Hailstone, an attorney, conferred with Defendants Talerico and Fozard, who agreed to assist in removing references to Sara Hailstone from the Plaintiffs' website. (Doc. 40, p. 8).  On October 7, 2005, Hailstone's father, Andrew Hailstone, an attorney, sent a letter to the Plaintiffs on his law firm's letterhead that demanded that the Plaintiffs remove the threatening language relating to Sara Hailstone from their website.  *Id.*  On the same day, Plaintiff Joseph Pilchesky sent a fax to Andrew Hailstone, stating that Hailstone should point out the

3

threatening language, which, if the Plaintiff agreed, he would take off the message board.  (Doc. 40, p. 9 & Ex. B, p. 1).

On October 6 and 7, 2005, A. James Hailstone allegedly contacted the Plaintiffs' web hosting company, Sparklit Enterprises, Inc. ("Sparklit"), requesting that the entire message board be shut down, which Sparklit did not do.  (Doc. 40, p. 9).  Allegedly, Defendant Talerico then called Sparklit to ask it to shut down the message board, which Sparklit again did not do.  (Doc. 40, p. 9). The second amended complaint states that Defendant Fozard then sent Sparklit a letter requesting it to shut down the message board, "at least temporarily," because of a criminal investigation involving the "harassing posts" it contained.  (Doc. 40, p. 10 & Ex. C).  On October 7, 2005, Sparklit responded to Defendant Fozard's letter by shutting down the Plaintiffs' website.  (Doc. 40, p. 10).  Defendant Fozard never contacted either Sparklit or the Plaintiffs to inform them that the criminal investigation had ended, and it is unclear whether the Plaintiffs' website was ever re-opened.[6]  (Doc. 40, p. 12).

## IV.  Allegations of the Second Amended Complaint

In their second amended Complaint, the Plaintiffs claim that Defendants Fozard, Talerico, and Evanchick knowingly acted to shut down the Plaintiffs' website (www.dohertydeceit.com), which allegedly violated their constitutional protections under the First Amendment and 42 U.S.C. § 1983, specifically insofar as it constituted a prior restraint and denied them their freedom of expression.  (Doc. 40, p. 15).  Specifically, the Plaintiffs allege that Defendant Talerico called

---

6.   The second amended Complaint states that, "prior to December 22, 2005, Defendant Fozard never contacted Sparklit.com to unblock the message board (although his letter claimed he only sought 'temporary' blocking)."

Sparklit and requested that it shut down the Plaintiffs' message board, although Sparklit did not comply at that time.[7]  (Doc. 40, p. 9).  The second amended complaint then avers that Defendant Fozard sent a letter to Sparklit to inform it that a criminal investigation was pending relating to the Plaintiffs' message board, and Sparklit shut down the website in response.  (Doc. 40, p. 9-10).  The Plaintiffs also claim that Defendant Fozard did not inform Sparklit when he terminated the criminal investigation.  (Doc. 40, p. 12).  The second amended complaint further states that Defendant Evanchick supervised Defendant Fozard and "expressly or impliedly approved and ratified" his alleged violations of the Plaintiffs' constitutional rights.[8]  (Doc. 40, p. 12).

The second amended complaint also contends that, because the Plaintiffs posted information on their message board that was critical of Scranton officials, Defendants Fozard, Talerico, and Evanchick retaliated against them by shutting down the website, violating the Plaintiffs' First Amendment rights.  (Doc. 40, p. 16).  The Plaintiffs further allege that Defendants Fozard, Talerico, and Evanchick deprived them of their liberty and property without due process of the law, violating the Fourteenth Amendment and 42 U.S.C. § 1983.  (Doc. 40, p. 17).  Finally, the second amended pleading alleges that, by contacting Sparklit, Defendants Fozard and Talerico "entered into a combination, agreement, or understanding" with other unnamed individuals to violate the Plaintiffs' 42 U.S.C. § 1983 protections, as well as their constitutional rights under the First and Fourteenth Amendments.  (Doc. 40, p. 18).

---

7.    Although, in their brief, the Plaintiffs do not specifically name the allegedly offensive actions when stating their First Amendment claims, we presume that the claims refer to the actions of the Defendants stated in the Statement of Facts in the second amended complaint.  (Doc. 40, p. 15).

8.    We note that neither of the Plaintiffs were ever criminally charged for the contents of their website.

The Plaintiffs further aver that Defendants McTavish and Pawlowski, the PSP supervisors, violated their First Amendment rights by "acting with deliberate indifference in maintaining unconstitutional policies that permit employees of the Pennsylvania State Police to violate constitutional rights and/or failing to train employees to avoid constitutional violations against individuals." (Doc. 40, p. 15).

We note that, although the second amended complaint named as Defendants Miller, Periandi, Marut, Mitchell, Waggoner, and Jarbola, a review of the second amended Complaint fails to unveil any stated claims against those individuals.  Thus, we recommend granting the Motion to Dismiss, in regards to the six (6) stated Defendants, and we will not address these Defendants hereinafter.

The Plaintiffs seek permanent injunctive relief, as well as nominal, compensatory, and punitive damages for the injuries they claim were caused by the Defendants' alleged violations of their freedom of expression and due process protections under the First and Fourteenth Amendments.  (Doc. 40, pp. 19-20).  The Plaintiffs also seek attorneys fees pursuant to 42 U.S.C. § 1988.  (Doc. 40, p. 20).

## V.  Standards

### A.  Motion to Dismiss Standard

When evaluating a motion to dismiss, the Court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim

6

which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts that affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).  When a motion to dismiss is filed, the Court is to determine whether the plaintiff is entitled to further evidence from the sufficiency of the allegations in the complaint.  *Maio v. Aetna, Inc.*, 221 F. 3d 472, 482 (3d Cir. 2000).

### B.  Section 1983 Standard

In a § 1983 civil rights action, the plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)**.**    Further, § 1983 is not a source of substantive rights.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  Rather, it is a means to redress violations of federal law by state actors.  *Id.  See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-99 (M.D. Pa. 2005).

It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,* 451 U.S. 527.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiffs'

claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement in
> the alleged wrongs . . . . [P]ersonal involvement can be shown through
> allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge and
> acquiescence, however, must be made with appropriate particularity.
> (Citations omitted).

## VI.  Discussion

### A.  Count I.: Whether the second amended complaint adequately states that Defendants Fozard, Talerico, Evanchick, McTavish, and Pawlowski's actions constituted a prior restraint and denied the Plaintiffs the freedom of expression, in violation of their constitutional rights under the First Amendment

The Plaintiffs allege that the actions of Defendants Fozard, Talerico, and Evanchick

amounted to a prior restraint on the Plaintiffs' freedom of expression and, thus, a violation of their

constitutional rights under the First Amendment.  (Doc. 40, p. 15).  First, we find that the Plaintiffs

failed to state a claim against Defendant Talerico, because, although he called Sparklit to request

that they shut down the message board, he did not succeed in convincing them to do so.  Second,

we find that the allegations regarding Defendant Fozard do state a claim of a prior restraint under

the First Amendment, insofar as his written request to Sparklit led to the closure of the Plaintiffs'

website.  Third, we find that the Plaintiffs sufficiently claim that the supervisory Defendant

Evanchick was personally involved in the alleged wrongs and, therefore, alleges that he was liable

for violations of the Plaintiffs' constitutional rights, insofar as he "expressly or impliedly approved

and ratified" Defendant Fozard's actions.  Finally, we find that the Plaintiffs sufficiently state a claim

8

against Defendants McTavish and Pawlowski for "failing to train employees of the [PSP] to avoid constitutional violations." (Doc. 40, p. 12, 15).

If material subject to First Amendment protection is removed from circulation without a prior judicial determination in an adversarial proceeding, the result is a "prior administrative restraint" of speech, which is prohibited by the First Amendment. *Center For Democracy & Technology v. Pappert*, 337 F.Supp.2d 606, 656 (E.D. Pa. 2004). Prior restraints are generally presumed unconstitutional. *U.S. v. Bell*, 414 F.3d 474, 478 (3d Cir. 2005) (citing *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam)). However, prior restraints are not unconstitutional *per se* and may be permissible, depending on the type of speech at issue. *Id.* (citing *Southeastern Promotions*, 420 U.S. at 558. *See also Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931)). First Amendment protections do not necessarily attach "merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed." *Id.* (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) (Black, J.)).

### 1. Whether the contents of the Plaintiffs' website are constitutionally protected

First, we must determine whether the type of speech in the Plaintiffs' website was constitutionally protected. The Supreme Court generally subjects limitations of speech due to content to a strict scrutiny standard. *ACLU v. Ashcroft*, 322 F. 3d 240, (3d Cir. 2003); *Center For Democracy & Technology v. Pappert* , 337 F.Supp.2d at 652-53 (E.D. Pa. 2004). Strict scrutiny review for First Amendment violations requires that the restriction (1) serves a compelling governmental interest, (2) is narrowly tailored to achieve that interest, and (3) is the least restrictive

9

means of advancing that interest. *Id.*

Here, Defendant Fozard requested the closing of the Plaintiffs' website solely due to its content; therefore, we review his actions under the strict scrutiny standard.[9]  First, we find that there was no compelling governmental interest in shutting down the message board, because the messages discussing Sara Hailstone did not amount to imminent threats that would necessitate constitutional protection.  *Carmichael* expressly addressed the issue of alleged threats against government officials posted on the Internet.  *U.S. v. Carmichael*, 326 F. Supp. 2d 1267, 1278 (M.D. Ala. 2004).  *Carmichael* defined a "true threat" as a statement not entitled to First Amendment protection, by which the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence against a particular individual, "when, in its context, it would have a reasonable tendency to create apprehension that its originator will act according to its tenor."  *Id.* at 1280 (citing *United States v. Alaboud*, 347 F.3d 1293, 1296-97 (11th Cir. 2003); *United States v. Hartbarger*, 148 F.3d 777, 782-83 (7th Cir. 1998); *United States v. Kosma*, 951 F.2d 549, 556-57 (3d Cir. 1991) (internal citations, quotations, and alterations omitted)).  *See X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 68-69 (2d Cir. 1999) ("Insults that contain neither threats of coercion that intimidate nor fighting words that create the possibility of imminent violence must be tolerated.") (internal citation and quotations omitted).  "The inquiry is whether there was sufficient evidence to prove beyond a reasonable doubt that the defendant intentionally made statements [such] that a reasonable person would construe them as a serious expression of an intention to

---

9.    Although the Defendants contend that the PSP Defendants merely requested that Sparklit close the website, we determine that, but for Defendant Fozard's request, Sparklit would not have shut down the message board, thereby allegedly violating the Plaintiffs' constitutional rights.

inflict bodily harm." *Id.*

 *Carmichael* lists the relevant factors to determine whether speech is a threat proscribed under the First Amendment. *Id.* First, the court must consider the language itself. *Id.* (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). Second, the court must review the context in which the communication was made to determine if a reasonable person would construe it as a "serious intention to inflict bodily harm." *Id.* (quoting *Alaboud*, 347 F.3d at 1297).  Third, the recipient's subjective understanding of the communication is relevant to determining whether it is a threat or an act of intimidation.  *See id.*

 *Carmichael* held that a website that asked for information regarding the petitioner's pending criminal case, left blank spaces for pictures of government agents working on the case, and requested the addresses of informants and agents did not pose a "true threat" and could not constitutionally be ordered to be taken down. *Id.* at 1281. Further, that court determined that the wide dissemination of the petitioner's website actually reduced, rather than increased, its threatening nature. *Id.* at 1289 (noting the Court's observance in *United States v. Bellrichard*, 994 F.2d 1318, 1321 (8th Cir. 1993), that public threats are typically less intimidating that personal ones).

 Similarly, here, we find that the Defendants' purported interest in shutting down the Plaintiffs' website is not compelling, particularly when it is balanced against the political nature of the speech involved.  "Constitutional protection does not turn upon 'the truth, popularity, or social utility of the ideas and beliefs which are offered.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) (citation omitted).  Rather, speech is protected, unless it presents a "clear and present

danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."

*Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).

In this case, although we do not condone the highly personal attacks contained in the Plaintiffs' message board and question their potential to effect political change, we find that the posts about Sara Hailstone do not rise to the level of imminent threats to her safety, because they were not "serious expression[s] of an intent to commit an act of unlawful violence against a particular individual." *See Alaboud*, 347 F.3d at 1297. First, the language itself, which requests information about Sara Hailstone's professional and personal life, particularly about her relationship with a then-mayoral candidate[10], does not actually threaten or encourage others to harm her. (Doc. 40, pp. 7-8). Second, the context of the communication in question, a public message board containing a plethora of complaints about a multitude of local political issues, did not constitute a directed threat that a reasonable person would construe as a "serious intention to inflict bodily harm." Third, it is unclear as to whether Sara Hailstone construed the posts as an actual threat to her person or, rather, as merely a degrading attack on her character.

Further, assuming *arguendo* that the posts were true threats, Defendant Fozard's actions to shut down the entire website were not narrowly tailored toward eliminating the supposed peril. Where the government has a compelling interest in silencing threatening speech, the incidental impact on protected speech cannot be broader than necessary to further the state's interest. *Pappert*, 337 F.Supp.2d at 656. *Pappert* held that a statute requiring Internet service providers to block Internet websites displaying child pornography was an administrative prior restraint of

---

10.    We note that the principal subject of the website is the current Scranton mayor, Mayor Doherty.

protected speech barred by First Amendment, because the ban resulted in blocking websites having nothing to do with unprotected speech. *Id.*

Here, the message board contained 3,200 posts related to local politics, of which only the several aforementioned messages actually discussed Sara Hailstone. We note that the Defendants' briefs did not state any other messages that may have constituted a threat to Sara Hailstone. (Docs. 45-46, 55-56). Thus, shutting down the entire website resulted in limiting large amounts of speech, most of which had nothing to do with Sara Hailstone. Such broad action was not narrowly tailored toward curtailing any claimed threat to Sara Hailstone.

Finally, we find it necessary to emphasize the political nature of the website's contents. We note that "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). The authors of the Constitution "believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; that, without free speech and assembly, discussion would be futile; that, with them, discussion affords ordinarily adequate protection against the dissemination of noxious doctrine; that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government*." Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring) (footnote omitted). Political expression on governmental affairs and

public issues "has always rested on the highest rung of the hierarchy of First Amendment values." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (quoting *Carey v. Brown*, 447 U.S. 455, 467 (1980)).  Moreover, there is a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Accordingly, although intercepting imminent threats is a compelling government interest, Defendants Fozard's actions to shut down the website amounted to an overly broad restraint on political speech.  Moreover, as discussed, were the website truly threatening, less restrictive means existed to squelch its danger, such as removing only those offending posts or commencing criminal action against the persons making the alleged threats.

Finally, we find that the second amended complaint sufficiently states a claim against Defendant Evanchick for his alleged role in expressly approving Defendant Fozard's actions. However, we note that the Plaintiffs' claims against Defendant Evanchick are unspecific; therefore, they are suspect.

### 2. Whether Defendants Fozard and Evanchick may assert qualified immunity as an affirmative defense to claims that they violated the Plaintiffs' rights under the First Amendment

We must determine whether Defendants Fozard and Evanchick may assert qualified immunity or, alternatively, whether they may be held liable for their roles in closing the message board, thereby allegedly violating the Plaintiffs' rights under the First Amendment.  Qualified immunity protects government officials acting in their official capacity from liability for civil damages only "insofar as their conduct does not violate clearly established statutory or constitutional rights

14

of which a reasonable person would have known." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity does not apply when a government official violates a Plaintiffs' "clearly established" rights, of which a reasonable official would have been aware.  *Id.*

Here, as stated, the Plaintiffs adequately allege that Defendants Fozard and Evanchick violated their constitutional right to freedom of speech when they requested Sparklit to close the message board.  The Plaintiffs' First Amendment right to freedom of speech was unquestionably clearly established at the relevant time of this case.  Thus, the only remaining issue is whether Defendants Fozard and Evanchick would reasonably have been aware that their conduct amounted to a violation of the Plaintiffs' clearly established First Amendment rights.   Because this "reasonableness" analysis requires a more extensive inquiry that only discovery can afford, we find that the issue of qualified immunity survives the present Motion to Dismiss.[11]

### 3.  Whether the supervisory Defendants McTavish and Pawlowski may be held liable for constitutional violations that subordinate employees allegedly committed

The second amended complaint alleges that the supervisory Defendants McTavish and Pawlowski are liable in both their official and individual capacities for violating the Plaintiffs' First Amendment right to freedom of speech.  We find that the Plaintiffs have sufficiently stated this claim.

In civil rights cases, the doctrine of *respondeat superior* does not apply *per se* to supervisory Defendants acting in their official capacity.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

---

11.    The Defendants can certainly re-assert the qualified immunity defense after discovery is completed via a Summary Judgment Motion.  However, in a "reasonableness" analysis, we note that there was a clearly established First Amendment right to engage the community in public political discourse, as discussed above.

1988).  Rather, courts have held that a supervisory defendant must have personal involvement in the alleged wrongs.  *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976)).  Personal involvement can be shown through allegations of personal direction of or actual knowledge of and acquiescence in a constitutional violation.  *Id.*  A civil rights complaint adequately alleges personal involvement if it states the time, place, and persons responsible for the alleged violations.  *Boykins v. Ambridge Area School District*, 621 F.2d 75, 80 (3d Cir.1980).  Further, to establish a supervisor's liability, an affirmative link must be shown to exist between a subordinate's alleged misconduct and the intentional adoption of a plan or policy that shows the supervisor's authorization or approval of such misconduct.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  *Chinchello* further held that an official cannot be found liable merely for failing to train and supervise subordinates who violate the constitutional rights of citizens.  *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).

Moreover, under *Rizzo*, a city official cannot be held liable in his or her individual capacity for a subordinate's violations of an individual's constitutional rights, unless the official had "played an affirmative role in the deprivation of [those] rights."  *Brown v. Grabowski*, 922 F.2d 1097, 1119-1120 (3d Cir. 1990) (citation omitted).  *City of Canton* devised a test for individual liability, which instructs that a municipality's failure to adequately train police officers may give rise to liability under § 1983, if that failure amounts to "deliberate indifference" to the rights of an individual.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, the Plaintiffs' abstract allegations against Defendants McTavish and Pawlowski meet the necessary threshold to state claims, although their lack of specificity renders the claims

questionable.  The second amended complaint avers that Defendants McTavish and Pawlowski

"acted with deliberate indifference in maintaining unconstitutional policies that permit employees

of the [PSP] to violate constitutional rights and/or by failing to train employees to avoid

constitutional violations against individuals, including the Plaintiffs."  (Doc. 40, p. 15).  Although it

is unclear which policies allegedly contributed to the Plaintiffs' injuries, or which rights the PSP

employees were permitted to violate, the Plaintiffs provide enough information for present

purposes to allege the personal involvement of Defendants McTavish and Pawlowski.  Further,

without discussing specific acts, the second amended complaint succeeds in properly claiming the

deliberate indifference of Defendants McTavish and Pawlowski, which suffices to allege their

liability in their individual capacities, as well.  (Doc. 40, p. 15).

Therefore, we shall recommend that the Plaintiffs' Count I First Amendment claim against

Defendant Talerico be dismissed, and that it proceed against Defendants Fozard, McTavish,

Pawlowski, and Evanchick.

**B.  Count II: Whether the second amended complaint adequately states that Defendants Fozard, Talerico, Evanchick, McTavish, and Pawlowski's actions were retaliatory, in violation of the Plaintiffs' First Amendment protections**

The Plaintiffs claim that, by acting to close the message board, Defendants Fozard, Talerico,

Evanchick, McTavish, and Pawlowski retaliated against them for exercising their freedom of speech.

First, we recommend that the Plaintiffs' claims against Defendant Talerico be dismissed for the

reasons stated under our analysis of Count I.[12]  Second, we recommend that the retaliation claim

---

12.     Namely, we find that, because Defendant Talerico's action of requesting Sparklit to close down the Plaintiffs' website did not succeed, he cannot be found to have retaliated against the Plaintiffs.  A First Amendment retaliation claim "requires personal involvement in the alleged retaliatory conduct, so that there is a causal connection."  *Smith v. Dept. of General Svcs. of PA*, C.A. No. 05-3405, slip op. p. 8 (3d Cir. June 7, 2006) (citations

against Defendants McTavish and Pawlowski be dismissed, because they are incongruous.  Lastly, we find that the Plaintiffs' retaliation claim should survive the Defendants' Motions to Dismiss, as it relates to Defendants Fozard and Evanchick.

In *Sposto*, this Court examined a First Amendment retaliation claim and instructed a three-part test.  *Sposto v. Borough of Dickson City*, 2005 WL 3307333, at *2 (M.D. Pa. Dec 06, 2005) (denying a motion to dismiss a retaliation claim).  A plaintiff must first prove that the activity in question is constitutionally protected; second, that the government responded with retaliation; third, that the protected activity caused the retaliation.  *Id*.  However, at the pleading stage, the only matter of law is whether the first element is pleaded adequately.  *Id*. at *3.  Thus, the retaliation and causation requirements need not be reviewed at this stage of our case.  *See id*.

Here, we have already determined that the Plaintiffs have properly alleged that the contents of their message board are protected.  Therefore, we leave the final two questions unresolved until a later stage and recommend that the Plaintiffs' First Amendment retaliation claim against Defendants Fozard and Evanchick be allowed to proceed.[13]

However, the First Amendment retaliation claim against Defendants McTavish and Pawlowski should be dismissed.[14]   Retaliation necessarily involves an adverse action taken

---

omitted) (non-precedential).  In our case, there is no causal connection between Defendant Talerico's alleged conduct and the shutting down of the Plaintiffs' website.  Thus, based on the face of the second amended complaint, there is no First Amendment retaliation claim stated against Defendant Talerico.

13.   We do note that the complaint does not allege that Defendant Evanchick actually contacted Sparklit, but merely that he had expressly approved of Defendant Fozard's having done so.  (Doc. 40, p. 12).

14.    We note that the First Amendment, First Amendment retaliation, and due process claims against Defendants McTavish and Pawlowski in Counts I, II, and III, namely ¶ 56, 60, and 64 of the Plaintiffs' second amended complaint, are identical.  (Doc. 40, pp. 15-17).  The claims in ¶¶ 60 and 64 Counts II and III simply repeat that Defendants McTavish and Pawlowski "act[ed] with deliberate indifference in maintaining

subsequently to another person's action, which in this case involves the Plaintiffs' exercise of their First Amendment right to freedom of speech.  Because establishing general policies and training employees are actions that would precede violations of an individual's constitutional rights, we find no causal connection between Defendants McTavish and Pawlowski's alleged conduct, which amounted to retaliation against the Plaintiffs.

Therefore, we shall recommend that the Plaintiffs' First Amendment retaliation claim (Count II) be dismissed against Defendants Talerico, McTavish, and Pawlowski, and that it proceed against Defendants Fozard and Evanchick.

### C.  Count III: Whether the second amended complaint states that Defendants Fozard, Talerico, Evanchick, McTavish, and Pawlowski violated the Plaintiffs' right to due process under the Fourteenth Amendment

The Plaintiffs contend that, in shutting down their website without notice or a court order, the acts of Defendants Fozard, Talerico, Evanchick, McTavish, and Pawlowski deprived them of their liberty and property interests, violating their constitutional right to procedural due process under the Fourteenth Amendment and § 1983.  (Doc. 40, 17 & Doc. 50, pp. 18-19).  First, we recommend that the due process claims against Defendant Talerico be dismissed for the reasons stated under our analysis of Count I.[15]  Second, the Fourteenth Amendment procedural due process claim against Defendants McTavish and Pawlowski should also be dismissed for the reasons stated under our discussion of Count II, for example, their lack of personal involvement with the alleged

---

unconstitutional policies that permit employees of the Pennsylvania State Police to violate constitutional rights and/or by failing to train employees to avoid constitutional violations."  (Doc. 40, pp. 15, 16).

15.   The second amended complaint acknowledges that Defendant Talerico did not succeed in closing the website; thus, the Plaintiffs do not properly state a due process claim against Defendant Talerico, because he admittedly did not deprive the Plaintiffs of any property interest.  (Doc. 40, 9).

due process violations.  Finally, we recommend that the Motion to Dismiss be denied, as it relates to the due process claim against Defendants Fozard and Evanchick.

Procedural due process requires notice and a meaningful opportunity to be heard prior to a deprivation of liberty or property.  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).  Here, the Plaintiffs had a property interest in their website.  Thus, when Defendant Fozard sent Sparklit a letter that led to the closure of the website, without first seeking a court order, Defendant Fozard deprived the Plaintiffs of their property interest.  (Doc. 40, pp. 9-10).  Moreover, the complaint adequately, though vaguely, alleges that Defendant Evanchick expressly approved of Defendant Fozard's actions.  (Doc. 40, p. 12). Therefore, the Plaintiffs' procedural due process claim (Count III) against Defendants Fozard and Evanchick should proceed, and it should be dismissed against Defendants Talerico, McTavish, and Pawlowski.

**D. Count IV: Whether the second amended complaint states that Defendants Fozard and Talerico conspired to violate the Plaintiffs' rights under 42 U.S.C. § 1983**

We find that the Plaintiffs' conspiracy allegations against Defendants Fozard and Talerico state a colorable claim under **§** 1983.  To state a *prima facie* conspiracy claim under **§** 1983, the Plaintiffs must allege that the defendants deprived them of a Constitutional or federal right; that they conspired to do so while acting under color of state law; and that specific facts exist that establish an understanding that the defendants would carry out the alleged chain of events together. *Gay v. Shannon*, 2005 WL 756731, at *8 (E.D. Pa. 2005) (citations omitted); *Keys v. Klem*, No. 3:CV-06-0479 (M.D. Pa. Mar. 6, 2006) (quoting *Pardue v. Gray*, 2005 WL 1503917, at *3 (3d Cir. Jun. 27, 2005) (non-precedential) (citations omitted)).

Here, the Plaintiffs allege that, by leveraging the weight of their offices, Defendants Fozard and Talerico conferred and agreed to shut down the message board, thereby depriving the Plaintiffs of their constitutional right of freedom of speech.  (Doc. 40, pp. 8-10).  Although the Plaintiffs admit that Defendant Talerico did not prevail in his attempts to close the website, they adequately claim that he acted in concert with Defendant Fozard, who allegedly did have success in barring the message board.  Thus, we find that the conspiracy claim (Count IV), although somewhat vague, is sufficiently specific to withstand the Motions to Dismiss.[16]

**E.  Whether the Plaintiffs can receive injunctive, nominal, compensatory, and punitive damages, as well as attorney's fees**

For relief, the Plaintiffs request injunctive, nominal, compensatory, punitive damages and attorney's fees.[17]  (Doc. 40, pp. 19-20).  We find that the have sufficiently stated claims against Defendants Fozard, Talerico, Evanchick, McTavish, and Pawlowski, which may make the Plaintiffs

---

16.    We note that the Defendants are not precluded from refuting the Plaintiffs' conspiracy claim after discovery is completed through a dispositive motion.

17.    To the extent that the Plaintiffs seeks monetary damages for the PSP Defendants' actions in their official capacity, those claims should be dismissed on the grounds that they are barred by the Eleventh Amendment.  The Eleventh Amendment applies to claims asserted in federal court under 42 U.S.C. § 1983.  *Quern v. Jordan*, 440 U.S. 332, 342 (1979).  It prohibits suits brought in federal court where the state or its agency is the real party in interest, and in which the relief sought has an impact directly on the state itself.  *Pennhurst State Schools and Hospital v. Halderman*, 465 U.S. 89, 117 (1984); *Allegheny County Sanitary Authority v. United States Environmental Protection Agency*, 732 F.2d 1167, 1173 (3d Cir. 1984).  The Eleventh Amendment also bars actions under 42 U.S.C. § 1983 for money damages against state officials acting in their official capacities.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

     As stated, to the extent that the Plaintiffs here seek monetary damages, the PSP Defendants are immune under the Eleventh Amendment in their official capacities.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1991); *Howlett v. Rose*, 496 U.S. 356, 365 (1990).  We believe that the payment of any money judgment rendered against the PSP Defendants, who are indisputably employees working for the Pennsylvania State Police would have to be paid out of the Pennsylvania State Treasury.

     Thus, we find that the stated four (4) PSP Defendants in their official capacities are immune from this suit under the Eleventh Amendment with respect to Plaintiffs' requested relief for money damages.

eligible for injunctive, nominal, compensatory, and punitive damages, as well as attorney's fees.[18]

Specifically, the Plaintiffs seek to permanently enjoin the Defendants from requesting Internet service providers to shut down the Plaintiffs' online communications in the future. (Doc. 40, p. 19). Further, the Plaintiffs ask the Court to "order Defendants to implement policies, procedures, and training to ensure that employees of the [PSP] and the Lackawanna District Attorney's Office do not seek, without court order, to shut down" constitutionally protected Internet communications. (Doc. 40, p. 19).

Suits against state officials for constitutional violations they committed in their official capacity are eligible for prospective, injunctive relief under the Eleventh Amendment. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 179 (3d Cir. Pa. 2002) (citing *Ex Parte Young*, 209 U.S. 123 (1908)); *Hafer v. Melo*, 502 U.S. 21, 31 (1991). The Eleventh Amendment does not preclude an action brought under § 1983 against such officials for injunctive relief. *Id.* at 197.

Thus, in the instant case, to the extent that the Plaintiffs sue the Defendants in their official capacities for injunctive relief, the Eleventh Amendment does not preclude their suit. Thus, the Plaintiffs' § 1983 claims for injunctive relief can be maintained against the Defendants in their official capacities.

Moreover, the Eleventh Amendment does not bar the Plaintiffs from suing the Defendants for monetary damages for constitutional violations they may have committed in their individual capacities. *McGrath v. Johnson*, 67 F. Supp. 2d 499, 511 (E.D. Pa. 1999). Also, the Plaintiffs may

---

18. Although the claims against Defendants Fozard, Talerico, and Evanchick do not expressly allege their "deliberate indifference," we find that their alleged "knowledge" of the violations that are claimed suffices to meet the "deliberate indifference" standard at this time. (Doc. 40, pp. 15-17).

be awarded punitive damages if the Defendants' conduct is found to be "reckless, callous, intentional or malicious," . . . "but the [Defendants'] action[s] need not necessarily meet this higher standard." *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006) (citations omitted).   Finally, a successful plaintiff in a § 1983 suit is entitled to attorney's fees, pursuant to 42 U.S.C. § 1988; thus, if the Plaintiffs prevail on their claims, they will be entitled to attorney's fees.

## VII.  Recommendation.

Based on the foregoing,  it is respectfully recommended that the D.A. Defendants' Motion to Dismiss **(Doc. 42)** be granted in part and denied in part.   We recommend that the D.A. Defendants' Motion be granted, as to all claims, as it relates to Defendant Jarbola, because the second amended complaint fails to state a claim against Defendant Jarbola.   We recommend that the D.A. Defendants' Motion be granted as to the claims contained in Counts I, II, and III against Defendant Talerico.   Further, we recommend that the D.A. Defendants' Motion be denied, as to the conspiracy claim against Defendant Talerico in Count IV.

Moreover, it is recommended that the PSP Defendants' Motion to Dismiss **(Doc. 41)** be granted in part and denied in part.   Specifically, it is recommended that the PSP Defendants' Motion to Dismiss be granted as it relates to Defendants Miller, Periandi, Marut, Mitchell, and Waggoner, because the second amended complaint fails to state a claim against those Defendants. Additionally, it is recommended that the PSP Defendants' Motion to Dismiss be denied as it relates to Defendants Evanchick on Counts I-III, because the second amended complaint adequately alleges that Defendant Evanchick was personally involved in the alleged violations claimed in these counts, insofar as it is alleged that he expressly approved of them.   Further, it is recommended that

23

the PSP Defendants' Motion to Dismiss be denied on Counts I-III, as it relates to Defendants

McTavish and Pawlowski; and that it be denied on Counts I-IV, as it relates to Defendant Fozard.

Finally, it is recommended that this case be remanded to the undersigned for further

proceedings.


s/ Thomas M. Blewitt_____
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 8, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH AND JOANNE PILCHESKY,  :     CIVIL ACTION NO. **3:CV-05-2074**
                                  :
            Plaintiffs        :     (Judge Caputo)
                                    :
            v.            :     (Magistrate Judge Blewitt)
                                    :
JEFFREY B. MILLER, et al.       :
                                    :
            Defendants       :
                                    :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 8, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

25

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                    s/ Thomas M. Blewitt
                           _____
                                                    THOMAS M. BLEWITT
                                                    United States Magistrate Judge


**Dated: August 8, 2006**