# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH AND JOANNE PILCHESKY,

    Plaintiffs,

        v.

JEFFREY B. MILLER, et al.,

    Defendants.

CIVIL ACTION NO. 3:CV-05-2074

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Magistrate Judge Thomas M. Blewitt's Report and Recommendation (Doc. 59), Defendants' Objections to the Magistrate Judge's Report and Recommendation (Doc. 60), and Plaintiffs' Objections to Recommendations on Motions to Dismiss (Doc. 62). For the reasons set forth below, the Court will adopt in part and reject in part the Report and Recommendation.

## BACKGROUND

### a. Factual Background

The Second Amended Complaint states that the Plaintiffs operated a non-commercial website message board, www.dohertydeceit.com, the purpose of which was to give community members a forum to discuss local (*i.e.*, Scranton, Pennsylvania and vicinage) politics and politicians. (Doc. 40 p. 6.) On that website, community members could specifically discuss Scranton's Director of the Office of Economic and Community Development, Sara Hailstone. (Doc. 40 p. 7.) In either September or early October 2005, the Plaintiffs posted the following on their website:

> Who is Sara Hailstone? She's the Executive Director of OECD, and much, much more. Qualifications to be the Executive Director of

> OECD? None. Responsibilities: Handle tens of millions of dollars, among other things. When recently asked for records by a taxpayer group, she sent a written response that stated, "I refuse." Sara knows where millions of dollars went, and she's the only one who knows. She keeps her lips tight . . . sort of.

(Doc. 40 p. 7.)

On October 3, 2005, the Plaintiffs posted another message, entitled "Wanted: Info. On Hailstone," which stated "Everything and anything. Who is she dating? Has dated? Relations with Doherty? Email me if necessary. Confidentiality assured." (Doc. 40 p. 7-8.)

The Plaintiffs claim that, on October 5 and 7, 2005, in response to the postings, Sara Hailstone's brother, A. James Hailstone, an attorney, conferred with Defendants Talerico and Fozard, who agreed to assist in removing references to Sara Hailstone from the Plaintiffs' website. (Doc. 40 p. 8.) On October 7, 2005, Hailstone's father, Andrew Hailstone, also an attorney, sent a letter to the Plaintiffs on his law firm's letterhead that demanded that the Plaintiffs remove the threatening language relating to Sara Hailstone from their website. *Id.* On the same day, Plaintiff Joseph Pilchesky sent a fax to Andrew Hailstone, stating that Hailstone should point out the threatening language, and, if the Plaintiff agreed it was threatening, he would take it off the message board. (Doc. 40 p. 9 and Ex. B p. 1.)

On October 6 and 7, 2005, A. James Hailstone allegedly contacted the Plaintiffs' web hosting company, Sparklit Enterprises, Inc. ("Sparklit"), requesting that the entire message board be shut down, which Sparklit did not do. (Doc. 40 p. 9.) Allegedly, Defendant Talerico then called Sparklit to ask it to shut down the message board, which Sparklit again did not do. (Doc. 40 p. 9.)

The Second Amended Complaint states that Defendant Fozard then sent Sparklit a letter requesting it to shut down the message board, "at least temporarily," because of a

2

criminal investigation involving the "harassing posts" it contained. (Doc. 40 p. 10 and Ex. C.) On October 7, 2005, Sparklit responded to Defendant Fozard's letter by shutting down the Plaintiffs' website. (Doc. 40 p. 10.) Defendant Fozard contacted Sparklit on December 22, 2005, after the filing of the initial and First Amended Complaint, to inform it that the criminal investigation had ended. The Plaintiffs' website was reopened in response to the ending of the investigation. (Doc. 40 p. 12.)

### b. Procedural History

On October 12, 2005, the Plaintiffs filed their original civil rights action, naming as Defendant the Pennsylvania State Police Department("PSP"). (Doc. 1.) On December 21, 2005, the Plaintiffs filed their First Amended Complaint, adding as Defendants Jeffrey B. Miller, Ralph M. Periandi, Joseph R. Marut, Robert Evanchick, and Derek Fozard, and removing the Pennsylvania State Police Department as a Defendant. (Doc. 16.) On March 7, 2006, the Plaintiffs filed their Second Amended Complaint, adding to the list of Defendants Michael McTavish, Gregory Mitchell, Frank Pawlowski, Brett Waggoner, Andrew Jarbola, and Eugene Talerico. (Doc. 40.)

In response, on March 28, 2006, the PSP Defendants (Michael McTavish, Gregory Mitchell, Frank Pawlowski, Brett Waggoner, Robert Evanchik, Derek Fozard, Joseph Marut, Jeffrey Miller, and Lt. Colonel Ralph Periandi) and the District Attorney's Office of Lackawanna County ("D.A.") Defendants (Andrew Jarbola and Eugene Talerico) separately filed Motions to Dismiss the Second Amended Complaint. (Docs. 41 & 42, respectively.) On April 7, 2006, the D.A. Defendants filed a Brief in Support of their Motion to Dismiss. (Doc. 45.) On April 11, 2006, the PSP Defendants filed their Brief in Support of their Motion to Dismiss. (Doc. 46.) On May 8, 2006, the Plaintiffs submitted their Brief in Opposition to both

3

of the sets of Defendants' Motions to Dismiss, in response to which the two sets of Defendants timely filed separate Reply Briefs. (Docs. 55 & 56.)

On August 8, 2006, Magistrate Judge Thomas M. Blewitt issued his Report and Recommendation. (Doc. 59.) Defendants' Objections to the Report and Recommendation was filed on August 22, 2006. (Doc. 60.) On that same day, Plaintiffs' Objections to the Recommendations on Motions to Dismiss was filed. (Doc. 62.)

On September 6, 2006, Plaintiffs' Response to Defendants' Objections to the Report and Recommendation was filed. (Doc. 69.) On September 11, 2006, both the Defendants' Reply in Support of their Objections to the Report and Recommendation and the Defendants' Response to the Plaintiffs' Objections to the Recommendations on Motions to Dismiss were filed. (Docs. 70 & 71, respectively.) Plaintiffs' Reply Brief to the PSP Defendants was filed on September 15, 2006. (Doc. 72.) Plaintiffs' Reply Brief to the DA Defendants was filed on September 20, 2006. (Doc. 73-1.)

This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

### a. Standard of Review of Magistrate Judge's Report and Recommendation

Where objections to a magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. §636(b)(1)(C)), provided the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829

F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions of the report for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

### b. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiffs' favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir.1998).

In deciding a motion to dismiss, a court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). The court may also consider "undisputedly authentic" documents where the plaintiffs' claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256,

5

263 (3d Cir.1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Marion School District,* 132 F.3d 902, 906 (3d Cir.1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Electronics v. United States,* 220 F.3d 169, 178 (3d Cir.2000).

### c. Section 1983 Standard

In a civil rights action brought under 42 U.S.C. § 1983, the plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the laws or Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993). Further, § 1983 is not a source of substantive rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Rather, it is a means to redress violations of federal law by state actors. *Id. See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-99 (M.D. Pa. 2005).

It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S.

362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,* 451 U.S. 527. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiffs' claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998), "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  (Citations omitted).

## DISCUSSION

Magistrate Judge Thomas M.  Blewitt's Report and Recommendation (Doc.  59) recommends the following:

(1) that D.A. Defendants' Motion to Dismiss be granted, as to all claims, as it relates to Defendant Jarbola, because the Second Amended Complaint fails to state a claim against Defendant Jarbola;

(2) that D.A. Defendants' Motion to Dismiss be granted as to the claims contained in Counts I-III against Defendant Talerico;

(3) that D.A. Defendants' Motion to Dismiss be denied as to the conspiracy claim in Count IV against Defendant Talerico;

(4) that PSP Defendants' Motion to Dismiss be granted as it relates to Defendants Miller, Periandi, Marut, Mitchell, and Waggoner, because the Second Amended Complaint fails to state a claim against those Defendants;

(5) that PSP Defendants' Motion to Dismiss be denied as to Counts I-III as it relates to Defendant Evanchick;

(6) that PSP Defendants' Motion to Dismiss be denied as to Count I as it relates to Defendants McTavish and Pawlowski;

(7) that PSP Defendants' Motion to Dismiss be granted as to Counts II & III as it relates to Defendants McTavish and Pawlowski; and

(8) that PSP Defendants' Motion to Dismiss be denied on Counts I-IV as it relates to Defendant Fozard.

The Plaintiffs object to recommendations (2) and (7). Defendants object to recommendations (3), (5), (6), and (8). Therefore, recommendations (1) and (4) require this court to review the Report and Recommendation only for clear error or manifest injustice.

### a. Uncontested Recommendations

In reviewing Magistrate Judge Thomas M. Blewitt's recommendation as to issues (1) and (4), I see no indication of clear error or manifest injustice. Plaintiffs have failed to state a claim against any of the Defendants involved in (1) and (4), and make only minor reference to them in their Second Amended Complaint. (Doc. 40). As such, I will adopt the Report and Recommendation as it pertains to (1) and (4).

### b. Plaintiffs' Objections

Plaintiffs' object to the Motion to Dismiss Counts I-III with respect to Defendant Talerico. In finding in favor of the Defendant, Magistrate Judge Blewitt stated that the Plaintiffs failed to state a claim against Talerico because, "although he called Sparklit to request that they shut down the message board, he did not succeed in convincing them to do so." (Doc. 59 p. 8.) Plaintiffs argue that "it is not the case that only the last act and the last actor in a sequence of events can, as a matter of law, be the basis for a civil rights violation." *Id.* Plaintiffs cite to *Hydrick v. Hunter* in support of this claim. *Hydrick v. Hunter*,

8

449 F.3d 978 (9th Cir. 2006) *rev'd on other grounds*, 2006 WL 2773196 (9th Cir. Sep. 28, 2006). The United States Court of Appeals for the Ninth Circuit states:

> A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if [that person] does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made. Indeed, the requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Id.* at 991.

The United States Court of Appeals for the Third Circuit has not directly addressed this issue of causation in § 1983 cases. However, this interpretation has been followed by a number of other circuit courts. *See Darnell v. Ford*, 903 F.2d 556, 561 (8th Cir. 1990); *Wilson v. Town of Mendon*, 294 F.3d 1, 14-15 (1st Cir. 2002). Additionally, the United States District Court for the Eastern District of Pennsylvania found the United States Court of Appeals for the Ninth Circuit's statutory interpretation to be persuasive and adopted the court's analysis. *R. Williams v. Pa. State Police-Bureau of Liquor Control Enforcement*, 144 F.Supp.2d 382 (E.D.Pa. 2001). I also find the analysis of the Court of Appeals for the Ninth Circuit persuasive, and will apply it to the instant case.

Defendants base their counter to Plaintiffs' argument on the following:

> In limited circumstances, a person can also be subject to § 1983 liability for the acts of others. Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the constitutional violations of subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."

9

*Hydrick*, 449 F.3d at 991.

The United States Court of Appeals for the Ninth Circuit does not limit those cases in which a supervisor may be liable.  It describes the elements which extend liability to supervisors.  Therefore, Plaintiffs were required to have stated a claim that Defendant either (1) did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do, or (2) participated in or directed the violations, or knew of the violations and failed to act to prevent them.

Plaintiffs' Second Amended Complaint states that "[o]n October 10, 2005, Defendant Talerico informed Defendant Fozard that a letter from Defendant Fozard to Sparklit.com would cause the shutdown of Plaintiffs' entire message board."  (Doc.  40-1 ¶ 33.) Additionally, ¶ 26-30 allege other actions by Talerico which show his participation with Defendant Fozard.  Given the legal standards governing a motion to dismiss, I find that the Plaintiffs have adequately stated a claim against Defendant Talerico.  Therefore, the Magistrate Judge's Report and Recommendation with respect to issue (2) will be rejected. Further proceedings with respect to this issue shall be recommitted to Magistrate Judge Blewitt.

Plaintiffs also disagree with the Magistrate Judge's decision that Defendants McTavish and Pawlowski should have their Motion to Dismiss granted as to Counts II and III. Magistrate Judge Blewitt's Report and Recommendation found that general policies and training would precede violations, therefore there was no causal connection between Defendants McTavish and Pawlowski's alleged conduct which amounted to retaliation. Plaintiffs cite this Court's decision in *Sposto v.  Borough of Dickson City*, No.  3:05-cv-0980,

2005 WL 3307333 (M.D. Pa. 2005) (Caputo, J.). In *Sposto*, I held that "[i]n general, constitutional retaliation claims are analyzed under a three-part test. Plaintiffs must prove: (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Id*. at *2. "Furthermore, only the protected activity element of the three part test is a question of law." *Id.* at *3. Based on this standard, Plaintiffs' argument is valid. Plaintiffs have adequately pleaded the first element, and considerations of retaliation and causation are not subject to review at this stage.

Defendants argue that the allegations against them are too conclusory and should be dismissed. The United States Court of Appeals for the Third Circuit has held that "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Evancho v. Fisher,* 423 F.3d 347, 353 (3rd Cir. 2005). There are three claims made against Defendants McTavish and Pawlowski, in the Second Amended Complaint. All three of these claims are identical and state the following:

> Defendants McTavish and Pawlowski have caused the violation of the Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution by acting with deliberate indifference in maintaining unconstitutional policies that permit employees of the Pennsylvania State Police to violate constitutional rights and/or by failing to train employees to avoid constitutional violations against individuals, including Plaintiffs.

(Doc. 40-1, ¶¶ 56, 60, and 64.) Additionally, ¶ 45 alleges:

> Upon information and belief, Defendants McTavish and Pawlowski were deliberately indifferent in failing to train Defendant Fozard in his constitutional obligations to respect the right to free speech, and that failure was a direct and proximate cause of Defendant Fozard's actions detailed above. The need for training was

11

>obvious, and the inadequacy of the training was very likely to result (and did indeed result) in a violation of constitutional rights.

(Doc. 40-1, ¶ 45.)

Given the liberal standards of Fed. R. Civ. P. 8(a), Plaintiffs have stated an adequate claim to proceed at this stage. Therefore, Magistrate Judge Blewitt's Report and Recommendation will be rejected and Plaintiffs' Objection to Recommendations on Motions to Dismiss will be sustained as it applies to issue (7).

### c. Defendants' Objections

Defendants' objections to issues (3), (5), and (8) are based on the claim that Defendant Fozard's request to Sparklit to suspend the message board did not violate the Pilcheskys' First Amendment rights. Defendants argue that no threat, express or implied, was made and that the Magistrate Judge did not properly consider the question of coercion.

Defendants rely on a number of cases in support of their contention. First, they cite *Penthouse Int'l. Ltd. v. Messe*, 939 F.2d 1011 (D.C. Cir. 1991). In *Penthouse*, the publishers brought action against the former Attorney General and members of his Commission on Pornography arising from letters sent to distributors of adult magazines indicating that, if they failed to respond to allegations that they were selling pornography, the allegations would be included in the Commission's final report. The letter in *Penthouse* stated:

>The Attorney General's Commission on Pornography has held six hearings across the United States during the past seven months on issues related to pornography. During the hearing in Los Angeles, in October 1985, the Commission received testimony alleging that your company is involved in the sale or distribution of pornography.

> The Commission has determined that it would be appropriate to allow your company an opportunity to respond to the allegations prior to drafting its final report section on identified distributors.
>
> You will find a copy of the relevant testimony enclosed herewith. Please review the allegations and advise the Commission on or before March 3, 1986, if you disagree with the statements enclosed. Failure to respond will necessarily be accepted as an indication of no objection.

*Id*. at 1013.

The United States Court of Appeals for the District of Columbia held against the publisher. The court held that the Advisory Commission had no tie to prosecutorial power nor authority to censor publications. *Id*. at 1015. Additionally, the letter sent contained no threat to prosecute, nor intimation of intent to proscribe the distribution of the publications.

Defendants also rely heavily on *Zieper v. Metzinger*, 392 F.Supp.2d 516 (S.D.N.Y. 2005). *Zieper* involves a film maker and website host who brought action against an FBI agent and an Assistant U.S. Attorney, alleging that their attempts to shut down a website on which controversial video was appearing violated the First and Fifth Amendments. The video created by the Plaintiff in *Zieper* was approximately six minutes long, and appeared on the internet in October 1999. *Id.* at 518. Because the video, titled "Military Takeover of New York City," raised security concerns regarding the upcoming Millennium celebrations in Times Square, Defendant Metzinger, a Special Agent with the FBI, asked Zieper to remove the video. After his refusal, Defendants contacted Wieger, the owner of the site hosting the video, and asked him to remove the video. Wieger agreed, and the video was blocked for about ten days. *Id.* at 519.

In *Zieper*, the nature of the Defendants' contact with Wieger was a conference call.

13

During the course of Defendants' conversation with Wieger, he asked if the video could be blocked. Additionally, Defendants made the statement "[w]e've contacted your upstream provider, GTE. And if you don't pull the site down, they will." *Id.* at 523. Wieger testified that he believed that if Defendants contacted GTE, his business would have been adversely affected.

The Court in *Zieper* applied the test established in *Rattner v. Netburn*, 930 F.2d 204, 208 (2d. Cir. 1991). "The test is objective: whether the official's comments "can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request" to cease engaging in protected speech." *Zieper*, 392 F.Supp.2d at 525. Applying this test, the court held Defendants conversation with Zieper contained nothing that a reasonable jury could find to have been threats or coercion to chill Zieper's First Amendment rights. The Court also stated that Defendant Metzinger's status as an FBI agent did not make the conversation threatening, regardless of Zieper's own subjective feelings of "terror". *Id*. at 529. Analysis by the Court of Defendants conversation with Wieger, however, found that Plaintiff had stated a cause of action. "Numerous cases have found that requests for cooperation that are couched in language referring to criminal conduct may give rise to a First Amendment claim." *Id*. at 531. Defendants' statement that they were concerned that the video could incite a riot was held as being potentially coercive, particularly when said by an FBI agent. Additionally, Defendants' statement threatening the economic interests of Wieger were held as being potentially coercive. *Id.* at 532.

In the present action, Plaintiffs' counter by citing to *Bantam Books v. Sullivan*, 372

14

U.S. 58 (1962). In *Bantam*, the Rhode Island Commission to Encourage Morality in Youth sent informal notices to advise fifty-three book distributors that certain books and materials were deemed objectionable. One such letter stated:

> 'This agency was established by legislative order in 1956 with the immediate charge to prevent the sale, distribution or display of indecent and obscene publications to youths and (sic) eighteen years of age.
>
> 'The Commissions (sic) have reviewed the following publications and by majority vote have declared they are completely objectionable for sale, distribution or display for youths under eighteen years of age.
>
> 'The Chiefs of Police have been given the names of the aforementioned magazines with the order that they are not to be sold, distributed or displayed to youths and (sic) eighteen years of age.
>
> 'The Attorney General will act for us in case of non-compliance.
>
> 'The Commissioners trust that you will cooperate with this agency in their work.
>
> 'Another list will follow shortly.
>
> 'Thank you for your anticipated cooperation.

*Id.* at 63.

The United States Supreme Court in *Bantam* held that "the Commission deliberately set about to achieve the suppression of publications deemed 'objectionable' and succeeded in its aim." *Id.* at 67. The Court further stated that "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around." *Id.* at 68.

Plaintiffs in this action also cite to *White v. Lee*, 277 F.3d 1214 (9th Cir. 2000). *White* dealt with activities by the Department of Housing and Urban Development (HUD). Upon learning that a motel was to be converted into a multi-family housing unit--which Plaintiffs

believed would attract people who were mentally disabled or disabled through substance abuse--Plaintiffs began a newsletter in protest. A complaint was filed with the HUD office about this newsletter. HUD then proceeded to conduct an eight month investigation into the neighbors' activities and beliefs. Plaintiffs' claim was that this investigation chilled the exercise of their First Amendment rights.

The United States Court of Appeals for the Ninth Circuit, in analyzing the Plaintiffs' claim, held:

> The investigation by the HUD officials unquestionably chilled the plaintiffs' exercise of their First Amendment rights. It is true that the agency did not ban or seize the plaintiffs' materials, and officials in Washington ultimately decided not to pursue either criminal or civil sanctions against them. But in the First Amendment context, courts must "look through forms to the substance" of government conduct. Informal measures, such as "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," can violate the First Amendment also. This court has held that government officials violate this provision when their acts "would chill or silence a person of ordinary firmness from future First Amendment activities." Here, the type of investigation conducted and the manner in which the individual defendants carried out their functions more than meets that standard.

*Id.* at 1228 (internal citations omitted).

Other cases in which the courts have found coercive action in violation of the First Amendment include *Ctr. for Democracy and Tech. v. Pappert*, 337 F.Supp.2d 606 (E.D. Pa. 2004) (issuing by Attorney General informing internet service providers that they must or should disable access to certain images under threat of a court order held a threat.), *Neiderhiser v. Borough of Berwick*, 840 F.2d 213 (3rd Cir. 1988) (requiring forfeiture of substantial part of business in exchange for a zoning exemption held as coercive.),

*Penthouse Int'l. Ltd. v. McAuliffe*, 610 F.2d 1353 (5th Cir. 1980) (engaging in a series of warantless arrests and systematic visits to retailers of certain publications held as coercive), and *Am. Civil Liberties Union v. City of Pittsburgh*, 586 F.Supp. 417 (W.D. Pa. 1984) (releasing a letter to the media notifying all sellers of Hustler that they should remove current edition from premises or face sweep of all vendors and initiation of criminal proceedings held coercive).

Having analyzed these prior decisions, there are two situations in which the government may be found to have imposed on the First Amendment rights of an individual. First, the government is not empowered to threaten the invocation of the state's powers as a means of coercing an individual to abstain from what qualifies as protected conduct. *See Penthouse v. Messe,* 939 F.2d 1011; *Zieper*, 392 F.Supp.2d 516; *Rattner*, 930 F.2d 204; *Ctr. for Democracy and Tech.*, 337 F.Supp.2d 606. Second, the government may not deliberately engage in a course of conduct by which they invoke the powers of the state as a means of chilling a person from future First Amendment activities. *See White*, 277 F.3d 1214; *Penthouse v. McAuliffe*, 610 F.2d 1353.

Plaintiffs here claim that Defendant Talerico called Sparklit.com asking for the immediate shut down of Plaintiffs' message board. (Doc. 40-1, ¶ 32). In the course of this conversation, Defendant Talerico stated that Sparklit.com was on notice of illegal activities of one of its customers and that a court-order would be arranged if necessary. (Higginson Declaration, Ex. 1 to Plaintiffs' Objections, ¶ 7). Upon the failure of Sparklit.com to comply with Defendant Talerico's demands, Defendant Fozard was instructed to send a formal request indicating that a criminal investigation was on-going. (Doc. 40-1, ¶ 33; Ex. C to the

Second Amended Complaint).

If Plaintiffs are able to prove these facts, a reasonable jury could conclude that the threat of a court order, being put on notice to criminal activity of a customer, and the fax, taken in conjunction with the previous occurrence, were coercive to an extent that they compelled Sparklit.com to block access to Plaintiffs' website in violation of the First Amendment rights of Plaintiffs.

These same facts could also lead a jury to conclude that the government improperly used the state's power as a means of chilling the Plaintiffs' speech.  Plaintiffs' Complaint alleges what *Bantam* describes as "deliberately set[ting] about to achieve the suppression of [internet] publications deemed 'objectionable' and succeed[ing] in its aim." *Bantam Books*, 372 U.S. at 67.  While Defendants were perfectly free to send requests to both Plaintiffs and Sparklit.com asking for materials to be removed, *See generally R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85 (3rd Cir.  1984), in allegedly opening a criminal investigation with the express purpose of having Plaintiffs' political speech censored, a reasonable jury could find that Defendants impermissibly invoked the power of the state as a means of preventing the speech of Plaintiffs.

Defendants' motion relies on the argument that they did not violate a First Amendment right of the Plaintiffs in claims I-IV of their Objections to the Report and Recommendation.  Therefore, Defendants' Objections, as they pertain to issues (3), (5), (6), and (8), shall be rejected and Magistrate Judge Blewitt's Report and Recommendation shall be adopted on these issues.

The final claim raised by Defendants is that Magistrate Judge Blewitt erred in finding that they were not entitled to qualified immunity for their actions.  The Report and Recommendation held that the issue of whether Defendants Fozard and Evanchick would

18

reasonably have known that their conduct violated the Plaintiffs' rights can only be determined after the facts are developed through discovery.  I agree with Magistrate Judge Blewitt.  The Supreme Court said in *Malley v. Briggs* that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley*, 475 U.S. 335, 341 (1986).  Development of facts is necessary as the Plaintiffs can potentially show Defendant Fozard to have been plainly incompetent or to have knowingly violated the law.

I have already analyzed the Defendants' claim that their actions could not have constituted a threat and have rejected it.  Therefore, Defendants' motion shall be denied and Magistrate Judge Blewitt's Report and Recommendation shall be adopted with respect to Defendants' qualified immunity claim as it pertains to issues (3), (5), (6), and (8).

## **CONCLUSION**

For the reasons set forth above, I will adopt in part and reject in part Judge Thomas M. Blewitt's Report and Recommendation.

An appropriate Order follows.

| | |
|---|---|
| October 10, 2006 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo<br>United States District Judge |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH AND JOANNE PILCHESKY, | |
| Plaintiffs, | CIVIL ACTION NO. 3:CV-05-2074 |
| v. | (JUDGE CAPUTO) |
| JEFFREY B. MILLER, et al., | |
| Defendants. | |

**ORDER**

**NOW,** this 10th day of October, 2006, upon review of Magistrate Judge Thomas M. Blewitt's Report and Recommendation (Doc. 59) for plain error of manifest injustice, **IT IS HEREBY ORDERED THAT**:

    (1)    The Report and Recommendation is hereby **ADOPTED** in part and **REJECTED** in part.

    (2)    Defendants' Motion to Dismiss as it relates to Defendants Jarbola, Miller, Periandi, Marut, Mitchell, and Waggoner shall be **GRANTED**.

    (3)    Defendants' Motion to Dismiss as it relates to Defendants Talerico, Fozard, Evanchick, McTavish, and Pawlowski shall be **DENIED on all Counts**.

    (4)    This case is **REMANDED** to Magistrate Judge Thomas M. Blewitt for further proceedings.

                                              /s/ A. Richard Caputo
                                              A. Richard Caputo
                                              United States District Judge